[Crim. No. 390.  Second Appellate District.—November 12, 1915.]

## THE PEOPLE, Respondent, v. JOE RIVERA, Appellant.

CRIMINAL LAW—GRAND LARCENY—SUFFICIENCY OF EVIDENCE.—In this prosecution for the crime of grand larceny in stealing a heifer it is held that the evidence was sufficient to support the verdict.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

H. A. Pierce, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant, together with Bert Rivera and John Cassou, was charged with having committed the crime of grand larceny by stealing a heifer belonging to Elias Munz. The theft of the animal was claimed to have been committed in the cattle-raising district of Los Angeles County, near Elizabeth Lake. Appellant was convicted of the charge and sentenced to serve a term of imprisonment in the state prison. He appealed from an order denying a motion for a new trial and from the judgment.

As a principal contention involved in a consideration of the appeal is that the evidence was insufficient to warrant the jury in finding a verdict of guilty, it will be proper to review briefly the testimony introduced by the prosecution as the typewritten record shows it: At the time of the alleged theft appellant resided at a ranch which appears to have been owned or controlled by his brother and codefendant. Several miles away was the ranch of complainant Munz. Shortly before the 20th of April, 1914, Munz drove two cows, or rather a black cow and the heifer which was alleged to have been stolen, on to a nearby range, where they were left in charge of one Babcock. They were then upon an open range and at about the 20th of April they had come down near to Babcock's house and he drove them back into the hills where there

was a small canyon and a spring of water. This point where he left them was approximately between six and one-half and eight miles from the Rivera ranch. Immediately after the 20th of April Babcock missed the two animals hereinbefore referred to which belonged to Munz. Munz being informed of their absence, began a search in an endeavor to locate the animals. He went down upon the Rivera ranch and was proceeding, with the aid of a neighbor, to search in a thicket of willows that grew there. While so engaged Joe Rivera, the appellant here, came hastily down to where the men were, appearing in an excited state. He cursed Munz and told him to ''get off the place'' and not to search there without a search-warrant. Munz deemed it best to follow the advice of Rivera and proceeded at once to Lancaster, which was twenty miles away, where he procured a search-warrant and came back and resumed the search. It was observed that a pathway which led into the thicket of willows had been covered with leaves (apparently for the purpose of giving it the appearance of not having been disturbed). Following this pathway into the thicket Munz and his companion found evidences that something had been buried there and they soon unearthed what appeared to them to be the entrails of two cows, the remains of an unborn calf, together with a cow's head. This cow's head bore a resemblance to the head of the larger cow which had been taken from Babcock's range. Shortly thereafter another neighbor, who was about to embark with his boat on the body of water known as Elizabeth Lake, noticed a gunny-sack close to the shore and he took possession of it. In this sack was a hide, evidently that of a cow. Later another hide was found in a similar sack at the bottom of the lake near the shore. These hides were exhibited to Munz, who identified them, not only on account of the color of the hair which appeared clinging thereto, but because also of the fact that a brand appeared on the hides which he identified as being his own and one which his family used in marking their cattle. Munz testified that the brand on the younger animal had only been placed there about two months prior to the time of its disappearance. Witness Chandler was the keeper of a hotel at the town of Elizabeth Lake, which was about two and one-half miles northeast from the ranch of appellant. Chandler testified that on the night of the 20th of April, 1914, John Cassou came into his place,

asking if there were any cows in the yard. It was about 8 or 8:30 o'clock in the evening, and very dark and cloudy; a rain was threatening. Chandler testified that he took two lanterns and went out into the yard and that he there saw a young cow or heifer of a fawn color, and also a big dark-colored cow. (The heifer which Munz claimed to have been stolen from him by appellant was a light-colored Jersey heifer.) Witness Lindstrum was a next-door neighbor of Chandler's, and as Chandler went out that night into his yard he first called to Lindstrum. Lindstrum heard the call, but did not go farther than his front gate. Cassou drove the animals out of Chandler's yard and left the place. Lindstrum testified that when he came to his front gate in answer to Chandler's call, Joe Rivera, the appellant, was there seated upon a horse; that they exchanged greetings and that Rivera continued on his way and that there was the noise of something proceeding ahead of him. Witness Andrade, who lived about one mile from the Riveras, on the same night and at a time not far from that mentioned by Chandler in his testimony, hearing the barking of a dog, went out into his front yard and there saw this appellant and Cassou driving two cows. The animals had stopped at a watering trough that stood by the roadside. At a later date a man named Burns shipped a carcass of beef to Lapham, a butcher at Lancaster. The witness Andrade testified that some time after the alleged theft of the heifer he was present when Harry Burns reported to appellant that "they" had found the hides in the lake, and that Rivera had replied to him: "They won't know who put them there, anyhow." In the face of this testimony the claim that there was a lack of sufficient evidence to warrant the jury in convicting impresses us with but little force. We think that, upon the state of facts as the testimony for the prosecution presented them, there was ample evidence to show the commission of the crime alleged and the participation of this appellant in it. It is said by counsel in the briefs that it is altogether improbable that Joe Rivera and John Cassou could have driven the cattle from the place where Babcock left them, a distance of seven or eight miles, within the period of time from sunset or thereabouts until they were seen at Chandler's and Andrade's places. The witnesses in this case, as is usual in courtroom experience, did not attempt to state the time exactly, and even though they had, the ques-

tion as to the probability of the cattle having been driven the distance mentioned was one peculiarly for the jury to pass upon. No such state of improbability is presented by the evidence as to warrant this court in interfering with the verdict on that ground.

We find it urged also in the brief of appellant that the court improperly allowed testimony of the selling of the carcass of an animal or animals by Burns to Lapham. We find that objection was made to but little of this testimony, and that the main facts of the occurrence adverted to were given without any protest being heard from the appellant.

Some complaint is made on account of the refusal of the court to give certain instructions offered by the appellant. Those instructions, in so far as they may be said to have correctly stated the law, were pointed to the purpose only of emphasizing and laying stress upon matters which were, by other instructions given by the court, very fully stated to the jury.

We have given no attention to claims for error which are not supported by argument in the briefs. It seems clear enough that on the merits the case against appellant was fairly presented and that no error was committed which may be said to have produced a miscarriage of justice.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.